JOSÉ JOAQUÍN VIVES-GARCÍA and LUISA VIVES-CAPÓ, Plaintiffs and Appellants, *v.* UNKNOWN MEMBERS OF THE EXTINCT FIRM OF AMORÓS BROTHERS, RAFAEL AMORÓS-ALSINA, HEIRS OF WILLIAM McCORMICK, ETC., HEIRS OF JOHN C. McCORMICK, ETC., A. HARTMAN & CO., HEIRS OF FRANCISCO

AND JOSÉ RAMÓN VIVES-RIVERA, RAMÓN AND CONSUELO VI-
VES-RIVERA, ANA OROZCO DE CESTERO, and LUCE & CO.,
Defendants and Appellees.

No. 3379. Argued December 18, 1924.—Decided April 23, 1925.

1. CONVEYANCE — JUDGMENT ON PLEADINGS — RES JUDICATA. — A judgment not
   rendered on the merits of the case, but based on failure to amend the com-
   plaint within the time allowed after sustaining a demurrer that did not go
   to the merits can not be considered as *res judicata.*
2. ID.—ID.—ID.—If between two actions there exist all of the requisites consti-
   tuting *res judicata,* the fact that the doctrine by virtue of which the first
   action was dismissed was modified later by the Supreme Court does not
   invalidate the plea of *res judicata.*
3. ID.—MORTGAGEE—RECORD OF TITLE.—Grantees of a property from one who
   purchased it from another shown by the registry to have capacity to sell
   have the character of third mortgagees and enjoy the rights inferred from
   articles 33 and 34 of the Mortgage Law when the registry does not show
   affirmatively and clearly the facts relied on for securing the nullity of the
   said conveyances.
4. ID.—HEIR—SURVIVING SPOUSE—PARTITION.—An heir or surviving spouse may
   convey his interest in a property before the estate has been liquidated or
   partitioned.
5. PRESCRIPTION—COLORABLE TITLE—RECORD OF TITLE.—For the purposes of ac-
   quisitive prescription, when a fact appears affirmatively and clearly from
   the registry the person acquiring is not vested with a just title.

District Court of Guayama, G. Castejón, J. Judgment for the de-
fendants in an action for annulment of conveyances, etc. *Af-
firmed.*

*Celestino Domínguez Rubio* for the appellants. *José* and *M. Tous
Soto* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

As in the written opinion of the court below the princi-
pal facts are well resumed and the law, as we understand
it, is in the main well presented, we reproduce the said
opinion:

"This is an action for the annulment of sales and acknowledg-
ment of part ownerships, etc., based upon the following essential
averments:

"That Isabel Rivera Texidor, wife of Juan Vives de la Rosa,
was the owner of a moiety of the 'Esperanza' property situated in
the Machete ward of Guayama and described in the complaint, her
part interest having been acquired as follows: two-sixths by inher-

itance from her grandparents Jacinto Texidor Mayor and Casimira Moreno and one-sixth by purchase from her sister Vicenta Rivera Texidor under deed of February 3, 1854.

"That the said part ownership was acquired during the marriage of the said Isabel Rivera to Juan Vives de la Rosa.

"That when Isabel Rivera acquired said tract it contained only a small cane mill operated by oxen and a sugar factory of little value, and that during the time the spouses Vives Rivera occupied the said property they made thereon improvements (which are described) to the value of $30,000 as to the moiety of the property.

"That a few days after the death of· Juan Vives de la Rosa and prior to the partition of the estate, his widow, Isabel Rivera, without any title of ownership, sold the said moiety of the property in question, including the part ownership of a sixth part belonging to the community partnership, through her agent José Vives Rivera, to the commercial firm of Amorós Brothers, said sale having been made by deed of April 7, 1892, and recorded in the Registry of Property notwithstanding that the entries show that the principal was a married woman when she acquired the property and a widow when she sold it; that both the deed and the record also refer to the improvements made on the said property.

"That by deed of June 5, 1902, the extinguished firm of Amorós Brothers conveyed the said 'Esperanza' property to its partner, Rafael Amorós Alcina, and the latter, in turn, by deed of July 11, 1906, sold the said property to Juan Carlos and Guillermo McCormick, who knew that an action by Juan Vives de la Rosa was pending against the said property.

"That after the death of Guillermo McCormick, his successors and the other co-owner, Juan Carlos McCormick, by deed of August 25, 1910, transferred the ownership and possession of the 'Esperanza' property to the firm of A. Hartmann & Co., who also knew of the claim made by the succession Vives.

"That Ramón, José and Consuelo Vives Rivera, who formed part of said succession, executed a deed of settlement to Hartmann & Co., renouncing any right of action—real or personal—they might have or to which they might be entitled as heirs of Juan Vives de la Rosa to the said 'Esperanza' property,—Ana García de Orozco, mother of the then minor José Joaquín Vives García y Orozco, plaintiff herein, being present at the act; also that by deed of June 20, 1920, Hartmann & Co. sold the said property to Luce & Co., Ltd.

"The plaintiff also refers to the death of Isabel Rivera as well

as to the persons forming her succession, namely, her children Luis, Francisco, Juan José Ramón, Ramón and Consuelo, of whom Francisco and José died single, without succession, and Juan and Luis who were succeeded by their children José Joaquín Vives García y Orozco and Luisa Vives Capó, the present plaintiffs, Ramón and Consuelo Vives Rivera being still living and parties defendant to the present suit.

"The complaint ends with a prayer that all the transfers of the 'Esperanza' beginning with the sale made by Isabel Rivera Texidor to the firm of Amorós Bros. and the deed of settlement of certain heirs hereinbefore referred to, be declared null and void and that by virtue thereof Luce & Co. be required to acknowledge that the plaintiffs have a part ownership in the 'Esperanza' property equal to two-sixths of the total thereof as well as an equal share in the improvements effected on the said property.

"The succession of Guillermo and Juan Carlos McCormick and the firms of Hartmann & Co. and Luce & Co., Ltd., appeared and answered the complaint.

"The answer denies all the allegations of the complaint save No. 17, which refers to the acquisition of the 'Esperanza' property by Luce & Co., Ltd.; and by way of defense defendants allege:

"General demurrer of insufficiency of facts based on the prescription of the action of nullity, and also an acquisitive prescription.

"The defense of third mortgagee as to Luce & Co. and the defense of *res judicata.*

"The evidence presented by the parties herein is largely of a documentary nature, the only oral evidence for the plaintiffs being the testimony of Dolores Capó, widow of Vives.

"The said evidence comprises a certificate of the Registry of Property showing all the entries made therein in connection with the 'Esperanza' property; certificates of the death of Isabel Rivera Texidor, Juan Vives de la Rosa, Luis, Juan and Francisco Vives y Rivera and certificates of birth of José Joaquín Vives y García y Orozco and Luisa Engracia Gumersinda Isabel Vives Capó, the plaintiffs herein, and also a certificate of the marriage of Juan Vives de la Rosa with Isabel Rivera Texidor on September 6, 1852, as well as a certificate of certain recitals in the actions decided between the parties themselves and numbered 253 and 3270 in the registry of civil actions.

"Let us first consider the legal points before going to the gist of the matter even though we may have to change the order in which the issues have been submitted.

"*Third Mortgagee.*—The issue in this case hinges on the knowledge that Isabel Rivera's vendees might have obtained from the recitals in the registry as to the character of the property, subject matter of the settlement.

"The plaintiff contends that the registry shows that at the time Isabel Rivera acquired the co-ownership from her sister on February 3, 1854, she was already married to Juan Vives de la Rosa.

"The fact has been established by the certificate of marriage of said spouses, which took place on September 6, 1852.

"But if we examine the first entry in the registry relative to the 'Esperanza' property we shall observe that this fact does not appear therefrom.

"The said entry does not show that the spouses Vives Rivera are the owners of the 'Esperanza' or indicate the manner in which the part interests of Isabel including the co-ownership of a one-sixth part which she acquired from her sister Vicenta on February 3, 1854, were obtained, nor is there any showing of the civil status of Isabel Rivera at that time, that is, on the date of the acquisition.

"Nor is the fact that Isabel Rivera sold the said part interest while a widow (see entry No. II) established, since the registrar failed to state the civil status of Isabel Rivera when she made the transfer.

"But even supposing that at the time she acquired as well as sold the said part interest the civil status of Isabel Rivera did appear in the registry, we should still have grave doubts as to whether that fact of itself constituted sufficient notice to a third person as to the community nature of the property.

"Articles 33 and 34 of the Mortgage Law read as follows:

" 'Art. 33.—Instruments or contracts which are null under the law are not validated by their admission to record.'

" 'Art. 34.—Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.'

"Interpreting the latter part of said article 34, the Commentators on said article 34 of the Mortgage Law express themselves as follows:

" 'But a mere showing of the cause of the nullity or rescission is not enough; it must clearly appear, as required by law, and the courts before whom the action is brought must judge as to this.'

"In this judgment of December 20, 1904, the Supreme Court of Spain, in considering a question similar to the one at bar, maintained, among other things, the following doctrine:

" 'And because it would also be repugnant to the principles laid down in the Mortgage Law to compel third persons to make a legal inquiry into the status of specific properties when such status can and should be expressly and conclusively shown by the person concerned (J. C. 99, p. 688).'

"Our Supreme Court has upheld the same doctrine in several decisions, from which we quote the following:

" 'One who buys from a person whose title is recorded in the registry is protected unless a defect clearly appears in the registry of property. *People* v. *Riera,* 27 P.R.R. 1; *Sánchez* v. *Hartzell et al.,* 26 P.R.R. 620. The court below makes some point on the difference between the words "appear" and "result" as used in the said section. We think that the two words are synonymous for the purposes of this law and force is given to this view by the fact that in the War Department translation the word "resultar" is translated "appear." Ayllón *v.* González, 28 P.R.R. 61.

" 'Nullity which is not clearly shown by the registry.—Third Person.—It not appearing from the record of the property sought to be recovered that when the plaintiff's ancestor acquired it he was married, the fact that the record of a mortgage created in the year following the acquisition shows that the ancestor was married is not sufficient notice to third persons that he was married at the time of acquisition. The present possessor and his predecessor purchased the property from a person who, according to the registry, had capacity to sell it and if, on account of failure to join as a defendant the succession of the wife of the first purchaser, the purchase at public auction by the predecessor of the present owner is null and void, as such nullity does not clearly appear from the registry it cannot affect the present owner, who is a third person.' Menéndez v. Cobb, 28 P.R.R. 725.

"In short, it is our opinion that the firm of Luce & Co., Ltd., and their predecessors in interest, with the exception of Amorós Brothers who dealt directly with Isabel Rivera, partake of the character of third mortgagees whose rights cannot be invalidated in any way as a result of the nullities sought in this case.

"RES JUDICATA.—This is another of the grounds of demurrer relied on by the defendants herein and is based on two actions— Nos. 3270 and 253—brought before and decided by this Court.

"As to the first we will say that in our opinion the same does not sustain the plea of *res judicata,* since it was not decided on its merits but by a judgment based on the failure of the plaintiffs to amend their complaint within the term granted them after sustaining a demurrer to the complaint on the ground that the latter did not show the liquidation of the conjugal partnership in the action seeking to recover property belonging to said juridical entity.

"As to the second action, we consider the same well founded since between it and the one before us there is that identity of things, causes and persons required by section 1217 of the Civil Code and the case was decided on its merits.

"In opposition to the said plea the plaintiffs contend that this action is based on a new theory distinct from that on which the former suit was brought.

"We do not concur in this but are of the opinion that the theory is alike in both cases and that the only thing in favor of the plaintiffs is the fact that the doctrine on which the first case was dismissed was later modified by the Supreme Court.

"But we do not think that this fact can in any way overcome the said plea, since it would be tantamount to saying that the modification of a doctrine of a court of last resort would revive the right of action in a case already decided under the admittedly good jurisprudence then in force, that is, give a retroactive effect to the new theories in order to apply the same to cases decided at a time when the same were non-existent. The modification of an act never has a retroactive effect unless expressly so stated, and, applying the same principle to jurisprudence, we shall see that it is improper to apply the new theories to cases that were decided prior to the promulgation thereof.

"Moreover, such procedure would cause a great confusion in judicial circles since actions finally disposed of would be revived.

"ACQUISITIVE PRESCRIPTION. — The defendants base this plea on possession of the 'Esperanza' property under just title, publicly and in good faith for more than twenty years and hence their right to the co-ownership claimed.

"In opposition to this plea the plaintiffs contend that the only prescription the defendants could claim is the extraordinary and not the ordinary prescription and in support of their contention cite

the case of Capó v. Fernández, 27 P.R.R. 656, but we are of the opinion that this jurisprudence is not applicable here since that action, unlike the present one in which Luce & Co., Ltd., submit a title duly recorded in the registry, was one in which the defendants had no just title.

" 'Thence it appears that the present owners bought of persons who appeared to own the land in accordance with section 33 of the Mortgage Law. It made no difference that the father of the alleged real owners sold the land without having a right to do so. The innocent purchaser is protected and the heirs had an action over against their father.

" 'Likewise each one of the successive owners, except the immediate purchaser from the father acquired a just title and the defendants can use the possession of such owners to claim an ordinary prescription.'

"We can also cite in support of the foregoing the following cases decided by our Supreme Court: Cruzado v. López, 26 P.R. R. 148; Teillard v. Teillard, 18 P.R.R. 546; Maldonado v. Ramos, 24 P.R.R. 278, and Mateo v. Mateo, 28 P.R.R. 461.

"We understand that the plea of prescription in favor of Luce & Co., Ltd., is sustained by the law and the facts applicable thereto.

"The plea of extinctive prescription of the action of nullity has not been sustained by the defendants in their brief and we do not therefore propose to consider the same.

"As to the improvements, the evidence is so weak that we do not think it necessary to consider the same, and this is also true as to the nullity of the deed of settlement executed by certain of the heirs of Isabel Rivera to the firm of Hartmann & Co., there being a total lack of proof as to its nullity.

"For the foregoing reasons we are of the opinion that a judgment lies in the present case dismissing the complaint without special imposition of costs."

[1, 2] For convenience of treatment we shall first touch upon the third assignment of error relating to *res judicata.* This defence, if well taken, is fundamental in any case. We agree with the reasoning of the court below and do not find it necessary to add to it.

[3, 4] The first assignment of error relates to the defense of being third persons under the Mortgage Law. The

judge of the district court made it clear that when Isabel Rivera y Texidor, grandmother of the complainants, acquired a sixth part of the "Esperanza" the deed to her contained no statement that she was married, or at least no statement was made in the registry of such a married state. The appellants strongly draw attention to the fact that on the very day after the conveyance to her Isabel Rivera Texidor appears as the wife of Don Juan Vives de la Rosa and becomes a surety for him on a tutor's bond or something similar. The appellants say:

"When we consider that the marriage was contracted after the purchase of February 3rd, it is not logical to suppose that the young lady then about to contract matrimony, in the final stages of her single state and making preparations for a marriage of an ostentatious character given the fact that the bridegroom was a nobleman, was disposed to sign deeds for the acquisition of rights and execute, a few hours after the marriage, guaranties in favor of her husband."

We agree with the appellants that there was a fair probability that on February 3, 1852, Isabel Rivera was actually married to the grandfather of the complainants, but it must be remembered that we are dealing not with probabilities but with a presumption. A presumption is not a final fact but relieves the person who claims under it from presenting proof. The burden to establish the opposite falls on the other side. To invoke a presumption the proponent cannot rely on a probability but must present a certainty. This is exactly what section 1217 of the Civil Code provides, as follows:

"Presumptions are not admissible, except when the fact from which they are to be deduced is fully proven."

Nearly forty years after the time that Isabel Rivera had *appeared* to be acquiring this property by purchase from her sister, Amorós Hermanos purchased "Esperanza"

from Isabel Rivera. We do not see when we enter the field of presumptions that there was any necessity for Amorós Hermanos to look beyond the registry to see whether Isabel Rivera was or was not married. However, let us suppose that some such duty did devolve upon Amorós Hermanos. Subsequently there were various transfers of this property before it was bought by Luce & Co., the present owners. We quite agree with the court below that to Luce & Co. it could not clearly appear from the registry that the one-sixth part of the property "Esperanza" which Isabel Rivera acquired from her sister was not the separate property of the said Isabel Rivera, and the case of *Menéndez* v. *Cobb*, 28 P.R.R. 725, is particularly applicable.

Intentionally we say that Luce & Co. had no notice that the property recorded in the name of Isabel Rivera as a separate property was not in fact such separate property. There is another presumption in the law. When any person, man or woman, appears in a deed to be acquiring property, in the absence of something to show the contrary the said grantee is presumed to become the owner of said property. This is fundamental. Therefore the burden is thrown on the opposite side to show that it is not the separate property of the person acquiring it. This burden may be met by showing a married state, but as we have indicated, this must be done with certainty.

Isabel Rivera acquired a piece of property in 1852. She bought it from her own sister. Each of them evidently was heiress to a considerable estate. There is a fair probability that Isabel Rivera owned other property inherited from her parents besides the two-sixths portion of "Esperanza." We rather think that if there is any probability that Isabel Rivera was married, there is perhaps a stronger probability that the property acquired by her in 1852 was her own separate property purchased with her own money. If

we abandon the field of presumption to enter the field of probabilities we should be convinced that the one-sixth portion of "Esperanza" belonged exclusively to Isabel Rivera.

We should go further. We think that if there had been a presumption in 1852 that the one-sixth portion of "Esperanza" was matrimonial property, this presumption was successfully overcome. For over fifty years this one-sixth portion was treated as the separate property of Isabel Rivera by everyone. The history of "Esperanza" as shown by the various inscriptions in the registry shows that one-half of "Esperanza" appeared to be owned by Juan Vives as matrimonial property and the other half—namely, two-sixths of one-sixth—appeared to be owned by Isabel Rivera. Over and over again the fact that Isabel Rivera was the owner of one-half the property "Esperanza" was recognized by all the persons who dealt with it,—her husband, some of her children, various mortgagees and grantees. After such a lapse of time the appellants cannot rely on a probability to invoke a presumption whose opposite has been so continuously recognized.

Extraordinary prescription was not claimed in this case. Nevertheless the original grantor was Isabel Rivera and she was in recognized possession in 1854 and conveyed in 1892. Luce & Co. acquired in 1920. They are entitled at the very least to the implications of sections 33 and 34 of the Mortgage Law and are able to assert that the matrimonial character of this alleged one-sixth portion did not clearly appear from the registry.

We have not been fully able to understand the contentions of appellant that Isabel Rivera conveyed this property in 1892, immediately after the death of her husband and before the ganancial property had been liquidated. In view of the foregoing considerations the question is of little importance. It is evident, however, that Isabel Rivera would have been entitled to one-half of the said one-sixth portion of "Espe-

ranza'' and could convey it immediately. At no time did this court ever hold that an heir or surviving spouse might not convey the share belonging to him or her immediately after the death of the husband or ancestor. The utmost that our previous decisions held was that to revendicate the part claimed must be reduced to certainty by a liquidation, partition, or the like. Since the decisions in *Capó* v. *Fernández*, 27 P.R.R. 656 *et seq.*, it is even clearer that an heir or surviving spouse may convey his share of a piece of property without such liquidation or partition.

The complainants claimed two-sixth of one-sixth of the ''Esperanza'' property. However, as Isabel Rivera was herself entitled to one-half of this one-sixth, supposed to be matrimonial property, these complainants would only have been entitled to two-sixths of one-twelfth, or one thirty-sixth of the whole property. It is a fair guess that they inherited more from their mother.

[5] We do not agree with the court below in regard to the second assignment of error, or the ordinary prescription of ten years. If the appellants had been right that the matrimonial character of this property appeared in the registry, then the defendants would not have a just title. Where a fact clearly appears from the registry a person acquiring cannot obtain a just title. This is one of the very purposes of a registry system. In reversing the case of *Ayllón et al.* v. *González et al.*, 28 P.R.R. 61, the Circuit Court of Appeals, 288 Fed. 28, thought that the defects of a lack of bond, oath and record appeared from the registry. This court and the Supreme Court of the United States, *sub nom. Fernández* v. *Ojeda*, 266 U. S. 144, founded the theory of a just title on the fact that these defects did not so appear. If they had, no just title could have arisen.

With this exception we agree with the reasoning of the court below and the judgment must be affirmed.